D. L. BARNES, JR., & others, trustees, *vs.* STATE TAX COMMISSION.

Suffolk.    March 7, 1973. — May 10, 1973.

Present: TAURO, C.J., REARDON, QUIRICO, & KAPLAN, JJ.

*Taxaton,* Income tax. *Small Loans. Constitutional Law,* Equal protection of laws. *Words,* "Income subject to taxation."

"Income subject to taxation" under G. L. c. 62, § 3, as amended by St. 1971, c. 555, § 5, is substantially the Federal adjusted gross income of the taxpayer, i.e., gross income less all costs and expenses incurred in producing that income [591]; "income subject to taxation" under §§ 4 (a) and 4 (b) of St. 1971, c. 555, has the same meaning [591–592].

Interest on loans made in the course of business of a trust licensed to engage in the small loans business under G. L. c. 140, § 96, was properly taxed at the rate of nine per cent under c. 62, § 4 (a), as appearing in St. 1971, c. 555, § 5; a contention of the taxpayer that the exemption from taxation under § 4 (a) afforded by § 4 (a) (1) (ii) to "[i]nterest from loans made in the course of business by persons" licensed as pawnbrokers under G. L. c. 140, § 70, which was taxed at the rate of five per cent under § 4 (b), created a classification which was unreasonable and a denial of equal protection of the laws was not borne out by proof. [593–595]

BILL IN EQUITY filed in the Supreme Judicial Court for the county of Suffolk on December 31, 1971.

The case was reserved and reported by *Reardon, J.*

*Robert J. McGee* for the plaintiffs.

*Lawrence T. Bench,* Assistant Attorney General, for the State Tax Commission.

REARDON, J.   This bill for declaratory relief relative to the plaintiffs' tax liabilities under G. L. c. 62, §§ 1–8, as appearing in St. 1971, c. 555, § 5, was reserved and reported by the single justice.   The case is here on a record consisting of the bill, the answer, a statement of agreed facts, and certain other papers not material.

The plaintiffs are trustees of the Public Finance Trust (PFT).   PFT has been licensed under G. L. c. 140, § 96, by the Commissioner of Banks to engage in the business of making loans of $3,000 or less.   From its business activities PFT derives income from interest on the small loans made by it, and is subject to expenses consisting of interest which it pays on money borrowed for relending, and other expenses for personal services, travel, rent, utilities, and so forth.

In 1971 the Legislature substantially amended the personal income tax law, G. L. c. 62, and, in particular, §§ 1–8, by St. 1971, c. 555, § 5.   These amendments for the first time brought business trusts within the ambit of c. 62.[1]

The defendant State Tax Commission (Commission) construes G. L. c. 62 as imposing a nine per cent tax on the interest income of PFT from its small loans business within Massachusetts, and has allowed as a deduction interest paid by PFT on money it has borrowed but not deductions for ordinary business expenses such as salaries, traveling expenses, rents, utilities, insurance, and the like.   PFT seeks a declaration that in addition to those deductions which the Commission concedes it may deduct, it may also be allowed to deduct

---

[1] Between 1946 and 1971, PFT, or its predecessor trustees, never filed an agreement to be taxed as provided under G. L. c. 62, § 1 (e), or a Massachusetts income tax return, and never paid any Massachusetts income taxes.

all of its ordinary business expenses from its interest income, and that income so calculated shall be taxed at five per cent.

1. We consider first whether the taxable interest income of PFT is to be determined following deduction not only of interest paid on money borrowed for lending but also following deduction of all other necessary business expenses.

"Income" was long ago defined as "net income" in the context of an act which required a payment to the State subject to measure by that income. *Opinion of the Justices*, 5 Met. 596. That opinion gives strength to our interpretation of the question here raised as we construe G. L. c. 62.

General Laws c. 62, § 2 (a), defines gross income to mean "federal gross income" (essentially taxpayer's total receipts), with certain modifications not here material. General Laws c. 62, § 2 (b), provides that "[a]djusted gross income means gross income, as defined in subsection (a), less the deductions allowed under section sixty-two and section four hundred and four of the Code," with certain exceptions not here material. Section 62 of the Internal Revenue Code provides for the deduction of ordinary and necessary business expenses. General Laws c. 62, § 3, provides that "[i]ncome subject to taxation shall be the adjusted gross income less" certain exemptions not here material. Thus for the purposes of this case and others like it, "[i]ncome subject to taxation" is substantially the Federal adjusted gross income, i.e., gross income less all costs and expenses incurred in producing that income.

General Laws c. 62, § 4 (a), states: "The amount by which the following classes of income included in the income subject to taxation and received or derived during the taxable year by any resident of the commonwealth, exceeds the exemption allowable under section five B (b) shall be taxed at the rate of nine per cent." One of the classes of income therein referred to is interest.

The plain meaning of the statute is that income subject to taxation referred to in § 4 (a) is the same income as "income subject to taxation" referred to in § 3. It is further apparent that construing §§ 4 (a) and 4 (b) together, and disregarding exemptions allowable under those sections, the total "income subject to taxation" under those sections equals the "income subject to taxation" to which reference is made in § 3. The Commission, however, argues that the employment of the word "classes" in § 4 (a), in preference to "amounts" or "sums," demonstrates that certain types of income includible in "income subject to taxation" are extracted from the sweep of the statute and given treatment as gross amounts.

It says: "Once § 4 is reached, the types of income are separated again into two component parts — interest, dividends and capital gains in § 4 (a), and the remaining 'income subject to taxation' in § 4 (b). Business expense deductions are allowed under § 2 before the 'income subject to taxation' is determined under § 3, but when § 4 separates the two component parts of 'income subject to taxation' the business expense deductions follow only the § 4 (b) income." This argument not only puts a decided strain on clear statutory interpretation but will do considerable violence in practice to the calculations prescribed in § 3. It cannot be assumed that "income subject to taxation" was intended to have a definition in §§ 4 (a) and 4 (b) diverse from its meaning in § 3.

It is further argued that since the former Massachusetts personal income tax law treated interest, dividends and capital gains in a manner different from the treatment of other income and did not allow business expenses against those classes of income (see former G. L. c. 62, § 1 and § 6), in the absence of clear expression to the contrary "it should be inferred that the basic treatment of interest income remains the same as before." However, there is no gainsaying, as the Commission itself concedes, that the "1971 act completely

rewrote the Income Tax Law, and in many respects completely revised the basic nature of the tax." To be specific, PFT and similar trusts are now subjected to mandatory c. 62 taxation for the first time. PFT is a business incurring ordinary business expenses in the production of interest income. Given these circumstances, a new and different treatment of deductions from interest income is entirely reasonable when viewed as part of a continuing legislative purpose to tax income in the sense of net income.

Finally, the Commission makes reference to the failure of the statute to provide for apportioning business expense deductions between the two component parts of "income subject to taxation." However, as the Commission concedes, the statute (St. 1971, c. 555) was drafted in haste and is not as free from errors or as clear as one might hope. See 1971 Ann. Surv. Mass. Law, § 3.6, at p. 38. The failure of the statute to establish such a procedure should not be given undue weight particularly since the Commission may, and perhaps should, promulgate reasonable regulations to carry out its purposes. G. L. c. 14, § 4. Helpful sugestion to this effect has been given by the plaintiffs in their brief.

2. We pass to the consideration whether taxable interest income of PFT is subject to a levy at nine per cent or at five per cent. General Laws c. 62, § 4 (a), clearly imposes a tax at the rate of nine per cent on PFT's income apportionable to that section. However, § 4 (a) (1) (ii) exempts from the classification of interest taxable at nine per cent "[i]nterest from loans made in the course of business by persons subject to the provisions of sections seventy to eighty-five, inclusive, of chapter one hundred and forty." These are pawnbrokers. The plaintiffs argue that while "loans made in the course of business" establish a valid classification of property under art. 44 of the Amendments to the Massachusetts Constitution, the limitation to pawnbrokers is invalid. It is asserted that those words of limitation must be struck from the statute.

The core of the plaintiffs' arguments is that limitation of the exception to pawnbrokers is an attempt to classify persons, and not the property to be taxed, and that art. 44 does not authorize such a classification. See *Opinion of the Justices*, 266 Mass. 583, 584. It is argued that loans made by PFT, being identical in all material respects to those of pawnbrokers, must be part of the same art. 44 classification. We agree that the language of the exception in § 4 (a) (1) (ii) is phrased in terms of persons. But the essential distinction is one of the nature of the business and incidents which characterize the property employed therein. The plaintiffs themselves aver that "loans made in the course of business" although essentially no different from other money at interest might constitute a separate class subject to a different rate of tax. It may be added that further limitation of the classification, even if described in terms of persons, which reflects actual underlying differences in the property is allowable under the language of art. 44. Pawnbrokers have been treated separately since the Legislature enacted St. 1918, c. 150. They are licensed and regulated by authorities different from those who license small loan agencies, see G. L. c. 140, §§ 70, 85–96, and may differ from them on allowable rates of interest, see G. L. c. 140, §§ 72, 100, and on other scores. It appears to us that the plaintiffs have not sustained the burden of showing that the classification which we accept here is either unreasonable or a denial of equal protection. See *Pinnick* v. *Cleary*, 360 Mass. 1, 27–28, and cases cited.

In short, while G. L. c. 62, §§ 1–8, as rewritten by the amendments, may leave something to be desired, it appears to us that the interpretation which we accord it here is the proper one. It is possible in debating a case such as this to weave an almost limitless web. Such argument seems particularly to be found in adversary proceedings on tax matters. We state here what we believe the Legislature had in mind and leave to the Com-

mission the task of issuing necessary regulations to supplement the statute and fill in its interstices with regulatory cement.

3. A binding declaration is to made that the plaintiffs' income subject to taxation under G. L. c. 62, § 3, is their adjusted gross income as determined under G. L. c. 62, § 2, and that the sum of all income taxed under G. L. c. 62, §§ 4 (a) and 4 (b), is not to exceed the income subject to taxation under § 3, and that of such income the amount derived from interest on loans made in the course of the plaintiffs' business is to be subject to tax under G. L. c. 62, § 4 (a), at the rate of nine per cent.

*So ordered.*