AUDREY SALHANICK vs. COMMISSIONER OF REVENUE.

Suffolk.  November 7, 1983. — April 13, 1984.

Present: HENNESSEY, C.J., WILKINS, LIACOS, ABRAMS, & O'CONNOR, JJ.

*Taxation,* Income tax.  *Constitutional Law,* Taxation.

The provisions of G. L. c. 62, § 1 (*k*), as applied to classify income derived
    from an equitable interest in iron ore as a capital gain, violated art. 44
    of the Amendments to the Constitution of the Commonwealth, where
    the classification was based on treatment of the income as a capital gain
    under the Internal Revenue Code and the Code made a distinction between
    an interest in iron ore held for less than six months and one held for
    more than six months. [659-665]

APPEAL from a decision of the Appellate Tax Board.

*Ira M. Bratt* of New York (*James B. Fox* with him) for the
taxpayer.

*H. Reed Witherby,* Assistant Attorney General, for the Com-
missioner of Revenue.

O'CONNOR, J. Audrey Salhanick (taxpayer) appeals pursuant
to G. L. c. 58A, § 13, from a decision of the Appellate Tax
Board (board) affirming the refusal of the Commissioner of
Revenue (Commissioner) to abate taxes paid by her. We reverse
the board's decision.

The taxpayer owned certificates of beneficial interest in the
Mesabi Trust (trust) throughout the years in issue, 1974, 1975,
and 1976. The trust owned land containing iron ore which it
leased to companies for the purpose of mining the ore. The
only income of the trust was royalty income from the mining
companies, based on the amount of iron ore mined. All income
of the trust, less minor amounts used to pay expenses, was
paid proportionately to the holders of certificates of beneficial
interest based on their ownership interest.

During the years 1974, 1975, and 1976, the taxpayer received her proportional share of the income received by the trust. She reported that income as long term capital gains on her Federal income tax returns for those years, with the result that that income was taxed by the Federal government at a lower rate than it would have been taxed had it been reported as ordinary income. See Internal Revenue Code (I.R.C.) 26 U.S.C. §§ 1202, 1222 (1954). However, the taxpayer reported the trust income as Part B income (income other than interest, dividends, or net capital gain — see G. L. c. 62, § 4), on her Massachusetts income tax returns, which therefore showed a smaller tax liability than they would have if she had treated the income as capital gains. For Federal tax purposes, income that qualified as long term capital gains tended to be taxed at a lower rate than other income. I.R.C. §§ 1202, 1222. During the years in question, the opposite was true with respect to Massachusetts taxes. G. L. c. 62, §§ 1 (*k*), 2 (*b*) (1), 2 (*b*) (2), 4.[1]

Based on audits of the taxpayer's returns for 1974, 1975, and 1976, the Commissioner assessed additional taxes and interest for each year. The assessments resulted from a reclassification of the trust income from Part B income to capital gains income. The taxpayer filed applications for abatement. The Commissioner disallowed those applications, stating that the trust income was taxable as capital gains in accordance with G. L. c. 62, §§ 1 (*k*) and 2 (*b*) (1). The taxpayer then appealed to the board under the formal procedure as provided in G. L. c. 62C, § 39. The appeal was denied and the taxpayer appealed to this court from that decision.

For Federal tax purposes, capital gains and capital losses are gains and losses from the sale or exchange of capital assets. I.R.C. § 1222. Capital assets are defined in I.R.C. § 1221. The iron ore owned by the trust was not a capital asset within

---

[1] A paragraph was added to subsection (*c*) of G. L. c. 62, § 2, by St. 1979, c. 409, § 2, providing that the deduction allowed by I.R.C. § 1202 would also be a deduction from Part A gross income during the taxable years commencing on or after January 1, 1980. The Massachusetts capital gains treatment thus became more consonant with the Federal treatment.

I.R.C. § 1221. However, during the relevant period, I.R.C. § 1231 permitted Federal taxpayers to treat gains in excess of losses from the sale, exchange, or involuntary conversion into other property or money, of property defined therein, as being derived from the sale or exchange of capital assets held for more than six months, and, therefore, as long term capital gains. In order to qualify for such treatment the property had to have been held for more than six months. The property embraced by I.R.C. § 1231 included "iron ore with respect to which section 631 applie[d]." I.R.C. § 631 (c) applied to iron ore that was mined in the United States, was disposed of by its owner "under any form of contract by virtue of which such owner retain[ed] an economic interest in such . . . iron ore," and was held by the owner for more than six months before disposal.[2]

The parties do not dispute that the iron ore involved here was mined in the United States, or that it was disposed of by the taxpayer-equitable owner under a contract by which she retained an economic interest in the ore within the meaning of I.R.C. § 631 (c), or that the taxpayer had owned her interest in the ore for more than six months before its disposition. There is no dispute that the trust income qualified for Federal tax treatment as long term capital gains. The issue is whether the trust income was properly taxable as capital gains under Massachusetts law or, instead, should be treated as Part B income taxable by Massachusetts at a lower rate.

In Massachusetts income is divided into Part A income, which was taxed at 9 per cent in 1974 and 1975, and at 10 per cent in 1976, and Part B income, which was taxed at 5 per cent during those years. G. L. c. 62, § 4. Part A income is defined as "total interest, dividends and net capital gain, included in Massachusetts gross income," with certain exceptions not relevant to this case. G. L. c. 62, § 2 (*b*) (1). Part B income is defined as "the remainder of the Massachusetts

---

[2] In 1976, I.R.C. §§ 631, 1222 and 1231 were amended to lengthen the holding period to nine months in 1977 and to one year in 1978 and thereafter. Tax Reform Act of 1976, Pub. L. 94-455, § 1402, 90 Stat. 1520, 1731-1733 (1976).

gross income." G. L. c. 62, § 2 (*b*) (2). During 1974, 1975, and 1976, "net capital gain," which along with interest and dividends, constituted Part A income, was defined by G. L. c. 62, § 1 (*k*), as "the excess of all capital gains over all capital losses recognized during the year . . . . The term 'capital gain' means any item of federal gross income . . . which is, *or is treated as being,* derived from the sale or exchange of a capital asset under the [Internal Revenue] Code" (emphasis added).[3] Thus, the taxpayer concedes that since her trust income was treated as having been derived from the sale of a capital asset under the I.R.C., it was a "capital gain" within the meaning of G. L. c. 62, § 1 (*k*). She further concedes that *if* G. L. c. 62, § 1 (*k*), was constitutional as applied by the Commissioner, the net capital gain resulting from her trust income was Part A income and was taxable at the higher rate.

The taxpayer's position is that G. L. c. 62, § 1 (*k*), as applied by the Commissioner, was unconstitutional because it resulted in the imposition of two different rates of taxation on income derived from the same class of property in contravention of art. 44 of the Amendments to the Constitution of the Commonwealth. The relevant portion of art. 44, which has no counterpart in the Constitution of the United States, *Daley* v. *State Tax Comm'n,* 376 Mass. 861, 861-862 (1978), is as follows: "Full power and authority are hereby given and granted to the general court to impose and levy a tax on income in the manner hereinafter provided. Such tax may be at different rates upon income derived from different classes of property, but shall be levied at a uniform rate throughout the commonwealth upon incomes derived from the same class of property." The taxpayer contends that art. 44 does not permit the classification of property, for the purpose of establishing different rates of taxation of the income generated thereby, according to whether the property meets the requirements of I.R.C. §§ 1231 and 631 (c). She argues, among other things, that her ownership of the iron ore for more than six months may distinguish her

---

[3] General Laws c. 62, § 1 (*k*), was repealed by St. 1979, c. 409, § 1, applicable to taxable years beginning on or after January 1, 1980.

from other taxpayers, but that fact does not distinguish her iron ore from iron ore held for less than six months. Since the rates of taxation on income derived from iron ore differ solely on the basis of that and other taxpayer circumstances, and not on the basis of differences between classes of property, the taxpayer contends, art. 44 is violated. We agree that the Massachusetts income tax statute, as applied in this case, contravenes art. 44.

"In addressing a constitutional challenge to a tax measure, we begin with the premise that the tax is endowed with a presumption of validity and is not to be found void unless its invalidity is established beyond a rational doubt." *Andover Sav. Bank* v. *Commissioner of Revenue,* 387 Mass. 229, 235 (1982). See *Daley* v. *State Tax Comm'n,* 376 Mass. 861, 865 (1978). We recognize that under art. 44 the Legislature has considerable discretion in designating different classes of property for the purpose of setting tax rates, *id.* at 865-866. That discretion is not unlimited, however. Article 44 requires uniformity of tax rates with respect to income derived "from the *same kind* of property" (emphasis added). *Opinion of the Justices,* 266 Mass. 583, 586 (1929). Properties are of the same kind unless there are "actual underlying differences" between them. *Daley* v. *State Tax Comm'n, supra* at 866, quoting *Barnes* v. *State Tax Comm'n,* 363 Mass. 589, 594 (1973). Although different rates are permitted on income derived from different kinds of property, "nothing in the Amendment authorizes the classification of the owners of property or of taxpayers" for the purpose of establishing different tax rates. *Opinion of the Justices, supra* at 586-587.

There are no underlying differences, and therefore there is no difference in kind, between iron ore that is held for more than six months and the same or other iron ore that is held for less than six months. The Commissioner argues that an interest in iron ore bearing land that is held for less than six months is likely to be held for speculation, that is, for quick gain on resale, whereas an interest in the same land that is held for a longer period is likely to be held for "investment," that is, for the purpose of generating royalties from the removal of the ore

without the taxpayer's active involvement. Property held for speculation is stated to be permissibly classified separately from property held for investment, thus justifying the taxation of income derived from one class as Part A income and the taxation of income from the other class as Part B income. In support of the contention that property may be classified for taxation purposes according to its owner's purpose in holding it, the Commissioner cites *Tax Comm'r* v. *Putnam,* 227 Mass. 522, 527 (1917), and *Barnes* v. *State Tax Comm'n, supra.*

*Putnam* and *Barnes* do not support the Commissioner's argument. In *Putnam, supra* at 531, we held that gains from the sale of intangible personal property could be taxed at a rate different from the rate of tax on interest and dividends: "The tax upon interest and dividends is levied upon a return which comes to the owner of the principal security without further effort on his part. The tax upon excess of gains over losses in the purchases and sales of intangible personal property is levied, not upon income derived from a specific property but from the net result of the combination of several factors, including the capital investment and the exercise of good judgment and some measure of business sagacity in making the purchases and sales. Gain derived in this way, to express it in 'summary and comprehensive form,' 'is the creation of capital, industry, and skill.' *Wilcox* v. *County Commissioners,* 103 Mass. 544 [1870]. It is not the production of capital alone and does not arise solely from a simple investment." The distinction we made in *Tax Comm'r* v. *Putnam, supra,* was between a dividend, which is a return on invested capital alone, and a gain resulting from the purchase and subsequent sale of a security, which is a return on invested capital plus the "exercise of good judgment and some measure of business sagacity in making purchases and sales." *Id.* Just as a contract for labor and service is "property" within the meaning of art. 44, *Raymer* v. *Tax Comm'r,* 239 Mass. 410, 413 (1921), so too a contract for the sale of a security is "property" and is justifiably classified differently from the security itself. Approval of that classification does not suggest approval of a distinction between an equitable interest in iron ore that is held for more than six months and an

equitable interest that is held for less than six months. In either event, the royalties derive from holding the iron ore alone. The amount of good judgment and business sagacity required to produce the income is no different in one case than in the other. The distinction that was approved in *Tax Comm'r* v. *Putnam, supra,* did not relate to the length of time that the property was held or to the taxpayer's motive in holding it. The distinction was not between property held for speculative purposes and property held for investment purposes. The distinction approved in *Tax Comm'r* v. *Putnam, supra,* was between property held and property sold. That does not help the Commissioner here.

In *Barnes* v. *State Tax Comm'n,* 363 Mass. 589 (1973), this court upheld a statute which taxed interest income from loans made by small loan agencies at a rate of nine percent, while it taxed at five percent interest income from loans made by pawnbrokers. We noted that small loan agencies and pawnbrokers were licensed and regulated by different authorities, and that small loan agencies "may differ from [pawnbrokers] on allowable rates of interest." *Id.* at 594. We concluded that due to the distinction between the natures of small loan agencies and pawnbrokers their loans could be separately classified without contravening art. 44. However, approval of a classification of loans according to the distinct nature of the lenders does not connote approval of a classification of royalty income according to how long the taxpayer has held the underlying property.

It simply cannot fairly be said that there is a difference in kind between iron ore that is owned for one period of time and the same iron ore that is owned for another period of time. The present case is similar to *Daley* v. *State Tax Comm'n,* 376 Mass. 861 (1978). In that case, upon terminating his employment, the taxpayer received a lump sum payment from an employees' trust established by his employer pursuant to a pension plan. In his Federal income tax return, the taxpayer reported part of the taxable portion of this payment as ordinary income and the balance as long-term capital gain. This treatment of the payment was mandated by I.R.C. § 402 (a), which

at that time divided certain lump sum distributions into a part derived from post-1969 employer contributions, taxed at ordinary income rates, and a part derived from a combination of pre-1970 employer contributions and appreciation, dividends, or interest on all contributions, taxed at the capital gains rate. These distinctions were imported into the Massachusetts system by provisions analogous to the statute at issue here. We held that art. 44 prohibited the division of the taxpayer's income from the lump sum distributions into two classes based only on the fact that the contributions were made at different times.

We hold that G. L. c. 62 is unconstitutional as it was applied in this case because it resulted in the imposition of different rates of taxation on income derived from the same class of property in contravention of art. 44 of the Constitution of the Commonwealth. Our holding is based on our conclusion that art. 44 prohibits classification of the taxpayer's certificates of interest in Mesabi Trust according to the length of time she owned them. Therefore, it is unnecessary for us to consider the taxpayer's other arguments. The decision of the Appellate Tax Board is reversed. The taxpayer's Mesabi Trust royalty income for the years 1974, 1975, and 1976 is to be treated as Part B income. All amounts collected by the Commissioner in excess of the tax appropriately imposed are to be refunded with interest from the date of collection.

*So ordered.*