## BOSTON SAFE DEPOSIT & TRUST COMPANY *vs.* COMMISSIONER OF REVENUE.

Suffolk. October 5, 1989. - December 6, 1989.

Present: LIACOS, C.J., NOLAN, LYNCH, & GREANEY, JJ.

*Taxation*, Excise. *Bank.*

The provisions of G. L. c. 63, imposing an excise tax on banking associations and disallowing deductions on account of certain interest paid to generate income exempt from Federal taxes, were not shown to be unreasonable in relation to the value of the privilege of banking associations to conduct business in the Commonwealth. [197-199]

APPEAL from a decision of the Appellate Tax Board.

The Supreme Judicial Court on its own initiative transferred the case from the Appeals Court.

*Kenneth A. Cohen* (*Alan Dankner* with him) for the taxpayer.

*Douglas H. Wilkins*, Assistant Attorney General, for the Commissioner of Revenue.

LIACOS, C.J. The taxpayer, Boston Safe Deposit & Trust Company (bank), appeals from a decision of the Appellate Tax Board (board) upholding a ruling by the Commissioner of Revenue (commissioner). The commissioner had denied the bank's application for an abatement of its Massachusetts excise tax for 1983.

We summarize the stipulated facts presented to the board. In 1983, the bank was subject to an excise tax imposed on banking associations pursuant to G. L. c. 63, §§ 1 and 2 (1984 ed.). Under the terms of c. 63, each banking association must pay to the Commonwealth an excise tax equal to

12.54% of the bank's net income.[1] General Laws c. 63, § 1, defines net income as "the gross income from all sources, without exclusion, for the taxable year, *less the deductions, but not credits, allowable under the provisions of the Federal Internal Revenue Code*" (emphasis added). Accordingly, the Massachusetts excise tax return for 1983 (form 63 BTC) calculates a bank's excise tax from the sum of the net income reported by the bank on line 28 of its United States corporation income tax return for 1983 (Federal form 1120), and any State and municipal bond interest not subject to Federal taxation.

Prior to 1982, the Federal Internal Revenue Code (Code), allowed banks to deduct interest (interest) paid on indebtedness incurred in order to purchase or carry obligations, even though these obligations, such as State and municipal bonds, produced income which was exempt from Federal tax (interest income).[2] Congress became concerned that banks were receiving a double tax benefit, in that they were allowed to deduct interest payments which produced tax-free income. In 1982, Congress passed the Tax Equity and Fiscal Responsibility Act which reduced by 15% any deductions relating to a "financial institution preference item," which was defined to include interest "exempt from taxes."[3] 26 U.S.C. §§ 291 (a)(3), 291 (e)(1)(B)(i) (1982).

---

[1] Section 2 of G. L. c. 63 states: "Every bank shall pay, on account of each taxable year, a tax measured by its net income, as defined in section one, at the rate of twelve and fifty-four one hundredths per cent."

[2] Section 265(2) of the Code (title 26 U.S.C.) provides in part: "No deduction shall be allowed for . . . [i]nterest on indebtedness incurred or continued to purchase or carry obligations the interest on which is wholly exempt from the taxes imposed by this subtitle, or to purchase or carry any certificate to the extent the interest on such certificate is excludable under section 128." However, banks generally were not subject to this disallowance provision because a deposit account on which a bank paid interest was not considered indebtedness incurred to purchase tax-exempt obligations.

[3] Section 291(a) states, in pertinent part:

"(3) *Certain financial institution preference items* The amount allowable as a deduction under this chapter (determined without regard to this

On September 15, 1984, the bank filed its Massachusetts excise tax return for the taxable year ending December 31, 1983, and paid the tax due. The bank's return reported the net income from line 28 of the bank's United States corporation income tax return, which reflected the 15% reduction. The bank filed an application for abatement with the Department of Revenue on April 16, 1985, claiming an overpayment of $82,155.56 on its 1983 excise tax.[4] The commissioner denied the bank's application on February 19, 1986, holding that, because G. L. c. 63, § 1, calculates net income according to deductions "allowable under the provisions of the [Code]," and 15% of the interest deduction is disallowed by the Code, the 15% disallowance must be applied for Massachusetts tax purposes. The bank then filed a timely appeal with the board. The board rejected the bank's claim. The bank filed a notice of appeal to the Appeals Court. We transferred the appeal to this court. We affirm the board's decision.

The sole issue before us is whether 15% of the bank's interest was properly disallowed as a deduction not "allowable under the provisions of the [Code]." The bank states that, while the Federal disallowance looked to tax exempt income, the bank's interest income was not tax exempt because it was

---

section) with respect to any financial institution preference item shall be reduced by 15 percent.

Section 291 (e) states in pertinent part: "*Definitions* For purposes of this section-

"(1) *financial institution preference item* The term 'financial institution preference item' includes the following:

"(B) *Interest on debt to carry tax-exempt obligations acquired after December 31, 1982*

"(i) *In general* In the case of a financial institution to which section 585 or 593 applies, the amount of interest on indebtedness incurred or continued to purchase or carry obligations acquired after December 31, 1982, the interest on which is exempt from taxes for the taxable year, to the extent that a deduction would (but for this paragraph) be allowable with respect to such interest for such taxable year."

[4] The amount of the requested abatement represents the product of 15% of the bank's interest, $655,148.00, and the statutory excise tax rate of 12.54%.

subject to the Massachusetts excise tax. The bank argues that, because the interest income was taxable, the deduction for interest paid to generate this interest income did not qualify as a "financial institution preference item" under the Code and was not subject to the 15% disallowance. Therefore, the bank claims that it was entitled to the full deduction of the cost of its interest as a deduction "allowable under the provisions of the [Code]."

The Constitution of the Commonwealth authorizes the imposition of an excise tax on the value of the privilege of transacting business within the Commonwealth. Part II, c. 1, § 1, art. 4. See *Opinion of the Justices*, 393 Mass. 1209, 1217 (1984). The Legislature has been given broad discretion to fashion an appropriate excise tax, limited only by the State constitutional requirement that the excise levied be "reasonable." *Connecticut Mut. Life Ins. Co.* v. *Commonwealth*, 133 Mass. 161, 163 (1882). See *Andover Sav. Bank* v. *Commissioner of Revenue*, 387 Mass. 229, 233-235 (1982).

Under the provisions of the Code, 15% of the bank's interest deduction was disallowed because the interest was paid to generate income "exempt from taxes." Clearly, this Code language refers to an exemption from Federal taxes. However, the bank argues that, when this statutory language is applied to the determination of the Massachusetts bank excise tax, it must be read to refer to income exempt from Federal *and* Massachusetts taxes. General Laws c. 63, § 1, refers specifically to deductions "allowable under the provisions of the [Code]." No language in c. 63 suggests that these provisions should be modified so as to refer to both Federal and Massachusetts taxes. Had the Legislature chosen to include such a modification in the calculation of the bank excise tax, it could have made its intention clear. *Industrial Fin. Corp.* v. *State Tax Comm'n*, 367 Mass. 360, 364 (1975). We decline to modify the plain meaning of G. L. c. 63, § 1. *Id.* at 364. The bank has failed to meet its burden of pointing to a particular statutory provision which requires that the full in-

terest deduction be allowed. *Commissioner of Corps. & Taxation* v. *Adams*, 316 Mass. 484, 487 (1944).

The bank argues further that the plain meaning of the statutory language produces an unreasonable result in that the bank is forced to pay a greater tax on taxable interest income due to a disallowance provision concerned with non-taxable interest income. This argument fails to appreciate that Massachusetts has not imposed an income tax on the bank in this case, but rather an excise tax which includes net income in its calculations.

By utilizing provisions of the Federal code to calculate net income for the purposes of the bank's excise tax, the Legislature has set out "a workable measure, a yardstick to calculate the value of the privilege of doing business in Massachusetts." *Commissioner of Revenue* v. *Massachusetts Mut. Life Ins. Co.*, 384 Mass. 607, 612 (1981). Such a measure need not reflect with absolute precision the value of doing business in the Commonwealth; "fair approximations" are sufficient. *Springfield Ins. Co.* v. *State Tax Comm'n*, 342 Mass. 505 (1961). Items which may not properly be considered for the purposes of an income tax can be considered in the calculation of an excise tax if they can reasonably be determined to be an addition to the value of doing business in the Commonwealth. *Commissioner of Revenue* v. *Massachusetts Mut. Life Ins. Co.*, *supra* at 612, 613. Indeed, items can be considered in the valuation of the privilege of doing business in the Commonwealth even though the Commonwealth could not have taxed these items directly. *Springfield Ins. Co.* v. *State Tax Comm'n, supra* at 513. Here, the Legislature chose to look to the Code and its concomitant 15% interest deduction disallowance for assistance in determining an appropriate excise tax. We cannot say that the Legislature's decision was unreasonable in relation to the value of the bank's privilege to conduct business in the Commonwealth. See *Andover Sav. Bank, supra* at 235.[5]

---

[5]The bank claims that our decision in *Rohrbough, Inc.* v. *Commissioner of Revenue*, 385 Mass. 830 (1982), supports its argument. We disagree. In

We discern no error of law in the board's decision. Accordingly, the decision of the board denying the application for abatement is affirmed.

*So ordered.*

---

*Rohrbough, Inc.*, we ruled that the Massachusetts domestic corporate excise tax could not be applied to a tax situation where the taxpayer had received no capital gain from a transaction. The case is distinguishable on its facts.