MELVIN B. DRAPKIN vs. COMMISSIONER OF REVENUE.

Suffolk. October 6, 1994. - May 16, 1995.

Present: LIACOS, C.J., WILKINS, ABRAMS, NOLAN, LYNCH, O'CONNOR, & GREANEY, JJ.

*Taxation*, Gross income, Income tax, Interest income, Deduction from income. *Constitutional Law*, Taxation, Income tax, Equal protection of laws.

Discussion of the legislative classification of income for tax purposes pursuant to art. 44 of the Amendments to the Massachusetts Constitution. [335-339]

The Commissioner of Revenue correctly assessed taxes on a taxpayer's income from the lending business of a Subchapter S corporation as Part A income, and the taxpayer did not demonstrate that the legislative classification of such income as interest violates art. 44 of the Amendments to the Massachusetts Constitution. [339]

A taxpayer did not demonstrate that the separate tax classification set forth in G. L. c. 62, § 2 (*b*) (1) (B), applicable to interest income earned by pawnbrokers violates art. 44 of the Amendments to the Massachusetts Constitution, where the taxpayer did not demonstrate that the classification was not supported by actual underlying differences between interest earned by pawnbrokers and interest earned by others in the business of making loans. [340-341] O'CONNOR, J., dissenting, with whom WILKINS & LYNCH, JJ., joined.

A taxpayer did not demonstrate that the separate tax treatment of pawnbrokers, set forth in G. L. c. 62, § 2 (*b*) (1) (B), violates the equal protection clause of the Fourteenth Amendment to the United States Constitution or art. 10 of the Massachusetts Declaration of Rights. [341]

The Commissioner of Revenue correctly required a taxpayer to deduct his business expenses in accordance with the provisions of G. L. c. 62, § 2 (*d*) (1) and 2 (*c*) (1). [341-344]

APPEAL from a decision of the Appellate Tax Board.

The Supreme Judicial Court granted an application for direct appellate review.

*Ann Marie Cannistraro & David R. Andelman* for the taxpayer.

*Rosemary S. Gale,* Assistant Attorney General, for the Commissioner of Revenue.

LIACOS, C.J. Melvin B. Drapkin (taxpayer) appeals from a decision of the Appellate Tax Board (board) affirming the refusal of the Commissioner of Revenue (commissioner) to abate taxes paid by the taxpayer. We granted his application for direct appellate review. We affirm the board's decision.

The taxpayer was a fifty per cent shareholder of two Massachusetts corporations, Eagle Mortgage Corp. (Eagle) and Bayside Funding, Inc. (Bayside), which had as their principal business activity the making of loans secured by mortgages on real property. The taxpayer worked full time in the corporations' lending business throughout 1987 and 1988, the years at issue. Eagle was a Subchapter S corporation for tax purposes under §§ 1362 and 1366 of the Internal Revenue Code and G. L. c. 62, § 17A (1992 ed.), during both years at issue and Bayside was a Subchapter S corporation in 1988, its first year of active operation. The income, deductions, and losses of a Subchapter S corporation are taxed to its shareholders under G. L. c. 62, § 17A, "as if . . . realized or incurred directly by [them] in the same manner as incurred by the corporation." G. L. c. 62, § 17A (*c*). Consequently, the taxpayer reported on his individual income tax return his proportionate share of the interest income from loans made by the two Subchapter S corporations. He reported this interest income as Part B income (income other than interest, dividends, or net capital gain). See G. L. c. 62, § 2 (1992 ed.).

Based on audits of the taxpayer's returns for 1987 and 1988, the commissioner assessed additional taxes and interest for each year. The assessments resulted from a reclassification of the interest income from Part B income to Part A income, which is taxed at a higher rate. In addition, the commissioner required the taxpayer to deduct his share of the business expenses of Eagle and Bayside from his Part B income, pursuant to G. L. c. 62, § 2 (*d*) (1), and allowed him

to deduct the expenses from interest income (Part A income) only to the extent that they exceeded the amount of the taxpayer's Part B income pursuant to G. L. c. 62, § 2 (*c*) (1).

In response to the commissioner's actions, the taxpayer filed applications for abatement. The commissioner disallowed those applications, and the taxpayer then appealed to the board under the formal procedure as provided in G. L. c. 62C, § 39. The appeal was denied and the taxpayer appealed.

The taxpayer asserts two interrelated arguments in his appeal. First, he argues that the classification of interest income derived by him through Eagle and Bayside as Part A gross income violates art. 44 of the Amendments to the Massachusetts Constitution and, further, that the exception provided for pawnbrokers provided in G. L. c. 62, § 2 (*b*) (1) (B), violates art. 44 of the Amendments to the Massachusetts Constitution, art. 10 of the Massachusetts Declaration of Rights, and the equal protection clause of the Fourteenth Amendment to the United States Constitution. Second, the taxpayer argues that the ordering of deductions provided in G. L. c. 62, § 2 (*c*), violates art. 44 in that it precludes him from fully deducting the expenses incurred in producing the interest income from his Part A gross income.

1. *Classification of interest income.* In Massachusetts, gross income is divided into Part A income and Part B income. During the years at issue, Part B income was subject to tax at the rate of five per cent and Part A income was subject to tax at the rate of ten per cent. G. L. c. 62, § 4, as appearing in St. 1973, c. 723, § 2; and as amended by St. 1975, c. 684, § 41. The two classes are defined by G. L. c. 62, § 2 (*b*):

"(1) Part A gross income shall be the total interest, dividends and capital gain net income included in Massachusetts gross income, other than: -

"(A) Interest and dividends from savings deposits . . .

"(B) Interest from loans made in the course of business by persons subject to the provisions of sections sev-

enty to eighty-five, inclusive, of chapter one hundred and forty [i.e., pawnbrokers].

"(2) Part B gross income shall be the remainder of the Massachusetts gross income."

According to this statutory scheme, interest income derived from loans is Part A income, unless the loans are made in the course of business by persons subject to G. L. c. 140, §§ 70-85 (1992 ed.) (pawnbrokers). The interest earned by the taxpayer in the instant case does not qualify for the exemption for savings deposits or the exemption for pawnbrokers.

The taxpayer argues that the interest derived from lending businesses such as Eagle and Bayside should not be classified as "interest" within the meaning of G. L. c. 62, § 1 (*i*), but instead should be treated as ordinary business income. The Legislature's failure properly to classify this income, he argues, violates art. 44.

Article 44, ratified in 1915, allows the Legislature to impose an income tax on Massachusetts residents. The article provides: "Full power and authority are hereby given and granted to the general court to impose and levy a tax on income in the manner hereinafter provided. Such tax may be at different rates upon income derived from different classes of property, but shall be levied at a uniform rate throughout the commonwealth upon incomes derived from the same class of property." The taxpayer's claim centers on his assertion that the interest income of Eagle and Bayside is of the "same class" as ordinary business income and as such should be taxed at five per cent, under Part B of c. 62, § 2 (*b*).

The Legislature, under art. 44, may designate income from different classes of property to be taxed at differing rates. The Legislature has broad discretion in setting the perimeters of these classes. However, in order for varying tax rates on income derived from different types of property to be upheld under art. 44, the distinction between different classes must be based on "actual underlying differences" in the kinds of property from which the income was derived. *Barnes*

v. *State Tax Comm'n,* 363 Mass. 589, 594 (1973). See *Commissioner of Revenue* v. *Lonstein,* 406 Mass. 92, 94 (1989); *Salhanick* v. *Commissioner of Revenue,* 391 Mass. 658, 662 (1984). We have, in recent years, struck down several classifications enacted by the Legislature as violative of art. 44.[1] The taxpayer relies on several of these cases in arguing that the interest income of his lending businesses should be classified as Part B gross income because it is of the same kind as other business income. However, none of these cases supports the taxpayer's position or refutes the presumption of validity enjoyed by G. L. c. 62, § 2 (*b*). See *Commissioner of Revenue* v. *Lonstein, supra* at 94 n.4, quoting *Aronson* v. *Commonwealth,* 401 Mass. 244, 254 (1987), cert. denied, 488 U.S. 818 (1988).

In *Salhanick* v. *Commissioner, supra,* we struck down a statute which provided for a varying tax rate on income received from certificates of beneficial interest in iron ore. The classification of the income as Part A or Part B gross income depended only on the amount of time the taxpayer held the property. There was no question that the property at issue was identical. We held that such a classification violated art. 44 because it provided for differing tax rates on income from the same class of property.

The taxpayer also cites *Commissioner of Revenue* v. *Lonstein, supra,* and *Daley* v. *State Tax Comm'n,* 376 Mass. 861 (1978). However, these cases provide no support for the taxpayer's case. In *Lonstein,* we invalidated a tax classification which taxed savings deposits at different rates depending on the amount of the deposit. In *Daley,* we held invalid differing tax rates on income from employee trusts depending

---

[1]The legislative enactments which have led to these cases appear to be in response to the modification of our tax system in 1971. St. 1971, c. 555. Major changes were made in 1971 in an effort to bring our system of taxation closer to the Federal model. However, as the cases illustrate, many of the aspects of the Federal model are in conflict with the requirements of art. 44. The Federal Constitution is void of any requirements such as those imposed in Massachusetts by art. 44. See *Salhanick* v. *Commissioner of Revenue,* 391 Mass. 658, 661 (1984); *Daley* v. *State Tax Comm'n,* 376 Mass. 861, 861-862 (1978).

on the date of the contributions by the employer. Like *Salhanick*, these cases involved property which was in all respects identical and thus, under art. 44, of the "same class."

In contrast to the property involved in *Salhanick, Lonstein,* and *Daley*, income received in the form of interest has a long history in Massachusetts of being treated separately from income not derived from interest. Pursuant to the mandate of art. 44, the first income tax enacted by the Legislature arranged income into separate classes of property taxed at different rates. This arrangement essentially differentiated between "earned" and "unearned" income, with the former taxed at a lower rate. Interest income was categorized as "unearned" income. This basic classification principle survives in modified form today through the separation of Part A gross income (interest, capital gains, and dividends) and Part B gross income (all other gross income) in c. 62, § 2 (*b*). Historically, there has been a clear legislative intent to tax interest income at a higher rate, even if it is derived through a trade or business. *Ingraham* v. *State Tax Comm'n*, 368 Mass. 242, 247 & n.3 (1975); *Commissioner of Corps. & Taxation* v. *Adams*, 316 Mass. 484, 486-487 (1944); *Markell* v. *State Tax Comm'n*, 2 Mass. Appellate Tax Bd. Rep. 75, 78 (1983).

By St. 1971, c. 555, the Massachusetts system of taxation was brought closer to the Federal model. However, Massachusetts, under art. 44, retained the separation between different classes of income, and corresponding uniform rates within those classes. *Markell* v. *State Tax Comm'n, supra* at 77-78. The changes enacted through St. 1971, c. 555, were further modified by St. 1973, c. 723. It is this most recent major modification which gives us the classification between Part A and Part B gross income in c. 62, § 2 (*b*). In addition to the formulation of the definitions Part A and Part B gross income, St. 1973, c. 723, also recognized the fact that Part A income might be derived from a "trade or business." Thus it appears that the Legislature contemplated that interest, even if arising out of conduct of a trade or business, was to be

taxed as Part A gross income and not as Part B gross income.

We have held that underlying differences supporting separate classifications of income may be shown by evidence of "habitual practice or custom or history or other considerations." *Daley* v. *State Tax Comm'n, supra* at 866. See *Barnes* v. *State Tax Comm'n, supra* at 594. The separate treatment historically given to interest income supports the separate classification provided by G. L. c. 62, § 2 (*b*). We find support also in the fact that the source of interest income is clearly distinguishable from the source of ordinary business income. See *Barnes* v. *State Tax Comm'n, supra*; *Commissioner of Corps. & Taxation* v. *Adams, supra*; *Daley* v. *State Tax Comm'n, supra*; *Opinion of the Justices*, 266 Mass. 583 (1929). Cf. *Ingraham* v. *State Tax Comm'n, supra*. Interest income has generally been defined as compensation for the use of money. See *Deputy* v. *du Pont*, 308 U.S. 488, 497 (1940); *Old Colony R.R.* v. *Commissioner of Internal Revenue*, 284 U.S. 552, 560 (1932); *Sayles* v. *Commissioner of Corps. & Taxation*, 286 Mass. 102, 105 (1934).

We note that the Legislature has considerable discretion under art. 44 to designate different classes of property for the purpose of setting tax rates. *Aronson* v. *Commonwealth*, 404 Mass. 244, 254 (1987), quoting *Salhanick* v. *Commissioner of Revenue*, 391 Mass. 658, 662 (1984). A tax set by the Legislature enjoys a presumption of validity and will only be voided by this court if its invalidity is established beyond a rational doubt. *Commissioner of Revenue* v. *Lonstein, supra* at 94, quoting *Andover Sav. Bank* v. *Commissioner of Revenue*, 387 Mass. 229, 235 (1982). Although lending is the primary business activity of Eagle and Bayside, and most of their income consists of interest paid on loans, we think that fact alone is insufficient to overcome the presumption of validity enjoyed by c. 62, § 2 (*b*). The taxpayer in the instant case has failed to carry his burden of establishing that his interest income is of the same class as ordinary business income and therefore that the tax classification is invalid under art. 44.

The taxpayer also asserts that even if the classification of interest income acquired by a lending business as Part A gross income is permissible under art. 44, the exception provided for interest earned by pawnbrokers (c. 62, § 2 [*b*] [1] [B]) violates art. 44. He further argues that the exception for pawnbrokers violates the equal protection clause of the Fourteenth Amendment and art. 10 of the Massachusetts Declarations of Rights.

We addressed the art. 44 implications of c. 62, § 2 (*b*) (1) (B), in *Barnes* v. *State Tax Comm'n*, 363 Mass. 589 (1973) (then codified at G. L. c. 62, § 4 [*a*] [1] [ii]). There we held that the classification of interest on loans made by pawnbrokers as Part B income and interest from other loans made in the course of business as Part A income did not violate art. 44. We recognized in *Barnes* that, although the language of the exception is phrased in terms of persons and not property, "the essential distinction is one of the nature of the business and incidents which characterize the property employed therein." *Id.* at 594. We stated that the classification accurately reflects "actual underlying differences in the property" and was therefore allowable under art. 44. *Id.* See *Aronson* v. *Commonwealth*, *supra*, quoting *Salhanick* v. *Commissioner of Revenue*, *supra*; *Daley* v. *State Tax Comm'n*, *supra* at 866.

The taxpayer asks us to reverse our holding in *Barnes* based on his assertion that there are no actual underlying differences between interest earned by pawnbrokers and interest earned by others in the business of making loans. Thus, he asks that we either classify all interest income acquired in the course of business as Part A income by striking down § 2 (*b*) (1) (B) or, in the alternative, strike the last portion of § 2 (*b*) (1) (B), which makes that subsection applicable only to pawnbrokers so that it will except all loans made in the course of business from Part A income.

Contrary to the taxpayer's assertions, *Commissioner of Revenue* v. *Lonstein*, 406 Mass. 92 (1989), and *Salhanick* v. *Commissioner of Revenue*, 391 Mass. 658 (1984), do not support his argument that *Barnes* was wrongly decided. As

discussed above, in both *Lonstein* and *Salhanick* we ascertained violations of art. 44. However, both of those cases involved varying tax rates on property which was in all respects identical in nature, except for the amounts involved or the length of time held. In contrast, *Barnes*, like the instant case, addressed the difference in classification between interest earned by pawnbrokers and others in the business of making loans, i.e., the difference in sources of interest income. When the two types of business are closely examined, "actual underlying differences" justifying the varying tax rates are apparent.

As noted above, we have held that underlying differences supporting separate classifications for property may be shown by evidence of "habitual practice or custom or history or other considerations." *Daley* v. *State Tax Comm'n, supra* at 866; *Barnes* v. *State Tax Comm'n, supra* at 594. The separate treatment allocated to pawnbrokers, in particular the distinct licensing and regulatory schemes applicable to them, supports the *Barnes* case's holding that sufficient actual underlying differences exist so as to support the classification provided in G. L. c. 62, § (*b*) (1) (B). See G. L. c. 140, §§ 70-85; *Barnes* v. *State Tax Comm'n, supra.* See also *Goldman* v. *Tax Comm'r*, 230 Mass. 554 (1918).

Because we conclude that the classification provided in G. L. c. 62, § 2 (*b*) (1) (B), does not violate art. 44, we also conclude that the classification does not deny the taxpayer equal protection of the laws as required by the Fourteenth Amendment and art. 10. See *Barnes* v. *State Tax Comm'n, supra* at 594. The taxpayer has not shown that the separate treatment afforded interest acquired by pawnbrokers is not supported by a rational basis. *Massachusetts Teachers Ass'n* v. *Secretary of the Commonwealth*, 384 Mass. 209, 240 (1981); *Smith* v. *Commissioner of Revenue*, 383 Mass. 139, 141, appeal dismissed, 454 U.S. 804 (1981). See *Seiler Corp.* v. *Commissioner of Revenue*, 384 Mass. 635, 639 (1981).

2. *Order of deductions.* The commissioner required the taxpayer to deduct his business expenses connected with Eagle and Bayside from his Part B income, pursuant to G. L.

c. 62, § 2 (*d*) (1), and allowed him to deduct them from Part A income only to the extent that they exceeded the amount of the taxpayer's Part B income, pursuant to G. L. c. 62, § 2 (*c*) (1). The board affirmed this ordering of deductions. The taxpayer argues that this order of deductions violates art. 44 in that it precludes him from fully offsetting the gross income he derives from his business by the expenses he incurred in producing it, thereby subjecting him to a tax not based on business net income.

The structure of our income tax system, based generally on income from separate classes of property, is reflected also in the treatment of deductions. Traditionally, specific items of deduction and exemption were allowable against income from each separate class. See *Commissioner of Corps. & Taxation* v. *Hornblower*, 296 Mass. 201 (1936) (losses sustained by brokerage partnership from purchase and sale of securities not deductible from business income); *Commissioner of Corps. & Taxation* v. *Adams*, *supra* at 487-488 (law provides separate deductions for each class, even if interest is acquired through business). This principle is present in G. L. c. 62, § 2 (*c*).

General Laws c. 62 incorporates much of § 62 of the Internal Revenue Code, which defines "adjusted gross income," and provides for the allowance of deductions "which are attributable to a trade or business carried on by the taxpayer." 26 U.S.C. § 62 (a) (1988). Under G. L. c. 62, § 2 (*d*) (1), these deductions are applied to Part B gross income. They are deductible from Part A gross income only to the extent that they exceed Part B income. G. L. c. 62, § 2 (*c*) (1). Moreover, 830 Code Mass. Regs. § 62.17A.1 (5) (c) (1993), applicable to Subchapter S corporations, provides in part:

> "Interest, dividends, and capital gains effectively connected with the active conduct of a trade or business of the qualified S corporation are Part A gross income from which the shareholder's excess deductions under M. G. L. c. 62, § 2 (c) (1) may be deducted."

Deductions are to a large extent a matter of legislative grace. The burden is on a taxpayer seeking a deduction to point to a particular statutory provision which authorizes the deduction. *Commissioner of Corps. & Taxation* v. *Adams*, *supra* at 487. See *Boston Safe Deposit & Trust Co.* v. *Commissioner of Revenue*, 406 Mass. 195, 198-199 (1989).

An argument similar to the one presented by the taxpayer here was raised in *Barnes* and, apparently in response to the concerns raised in that decision, the Legislature enacted St. 1973, c. 723. Statute 1973, c. 723, among other things, inserted § 2 (*c*) (1) in G. L. c. 62. "The effect of § 2 (*c*) (1) is to limit the allowance of business deductions against Part A income to the amount of Part A income which is effectively connected with the active conduct of a trade or business by the taxpayer." *Kargman* v. *Commissioner of Revenue*, 389 Mass. 784, 788 (1983). See *id.* at 788 n.2; *Markell* v. *State Tax Comm'n*, *supra* at 78.

We agree with the view of the board, "In general, the [L]egislature has the authority to determine which deductions will be allowed and what might be perceived to be more equitable considerations are not always controlling. The general rule is that 'deductions are a matter of legislative grace' and a taxpayer has the burden of justifying the allowance of any deduction claimed. . . . In certain instances the taxpayer must look to Congress or the [L]egislature to change a statute viewed by some to be inequitable." *Markell* v. *State Tax Comm'n*, 2 Mass. Appellate Tax Bd. Rep. 75, 78-79 (1983).

Although we are inclined to agree with the board in this case that "to tax income derived from a business involving both capital and personal work as if it were derived solely from property does not comport well with economic and commercial reality," we agree further that the classifications and resulting ordering of deductions cannot be said to be, in light of our previous decisions in this area, unconstitutional. We recognize that the Legislature is entitled to "the benefit of any constitutional doubt." *Daley* v. *State Tax Comm'n*, 376 Mass. 861, 865 (1978). Any modification of c. 62 in order to

bring it more in line with contemporary business reality is a matter for the Legislature and not the courts.

*Decision of the Appellate*
*Tax Board affirmed.*

O'CONNOR, J. (dissenting, with whom Wilkins and Lynch, JJ., join). The Commissioner of Revenue (commissioner) assessed additional taxes and interest for 1987 and 1988 as a result of reclassifying the taxpayer's interest income from Part B income to Part A income. The court holds that the reclassification was appropriate. I disagree.

Article 44 of the Amendments to the Constitution of the Commonwealth provides in relevant part as follows:

> "Full power and authority are hereby given and granted to the general court to impose and levy a tax on income in the manner hereinafter provided. Such tax may be at different rates upon income derived from different classes of property, but shall be levied at a uniform rate throughout the commonwealth upon incomes derived from the same class of property."

As the court recognizes, according to the scheme of G. L. c. 62, § 4, as appearing in St. 1973, c. 723, § 2, and as amended by St. 1975, c. 684, § 41, "interest income derived from loans is Part A income, unless the loans are made in the course of business by persons subject to G. L. c. 140, §§ 70-85 (1992 ed.) (pawnbrokers)." *Ante* at 336. The word "interest" in this statute has been construed in its usual sense, that is, "compensation . . . for the use of money" or as "damages for its detention." *Nichols* v. *Commissioner of Corps. & Taxation*, 314 Mass. 285, 289, 290 (1943). Thus, under the statute, a pawnbroker's compensation for allowing his customers to use his money is taxed at five per cent while the compensation paid to other lenders of money in the course of business is taxed at ten per cent. A pawnbroker's income, which is derived directly from money, is surely "de-

rived from the same class of property," i.e., money loaned in the course of business, as is the plaintiff taxpayer's income. Yet, the court holds that the tax levied on the taxpayer's income at twice the rate of taxation on a pawnbroker's income does not violate the constitutional mandate that taxes on income "shall be levied at a uniform rate throughout the commonwealth upon incomes derived from the same class of property." The court's holding defies the plain meaning of art. 44, and the court's opinion offers scant, and inadequate, reasoning to support its conclusion.

Essentially, without tarrying over logical justification, the court simply relies on *Barnes* v. *State Tax Comm'n*, 363 Mass. 589 (1973). In *Barnes*, the taxpayer was a business trust engaged in the business of lending money. The relevant issue on appeal was whether the trust's taxable interest income was subject to a levy at nine per cent or at five per cent. General Laws c. 62, § 4 (*a*) (1) (ii), as appearing in St. 1971, c. 555, § 5, exempted from classification of interest payable at nine per cent "[i]nterest from loans made in the course of business by persons subject to the provisions of sections seventy to eighty-five inclusive, of chapter one hundred and forty." The *Barnes* court noted, "These are pawnbrokers. The plaintiffs argue that while 'loans made in the course of business' establish a valid classification of property under art. 44 of the Amendments to the Massachusetts Constitution, the limitation to pawnbrokers is invalid. It is asserted that those words of limitation must be struck from the statute.

"The core of the plaintiffs' arguments is that limitation of the exception to pawnbrokers is an attempt to classify persons, and not the property to be taxed, and that art. 44 does not authorize such a classification." *Id.* at 593-594.

This court rejected the plaintiff taxpayers' argument in *Barnes* and held that art. 44 allowed a "classification, even if described in terms of persons, which reflects actual underlying differences in the property." *Id.* at 594. As in the present case, in *Barnes* the court did not identify the "actual underlying differences" between the property (money loaned in the

course of business) from which pawnbrokers' taxable income (interest) is derived, and the property (money loaned in the course of business) from which other lending businesses derive their income (interest). The *Barnes* court simply noted that pawnbrokers "are licensed and regulated by authorities different from those who license small loan agencies, see G. L. c. 140, §§ 70, 85-96, and may differ from them on allowable rates of interest, see G. L. c. 140, §§ 72, 100, and on other scores." *Id.* The court in *Barnes* was silent, as it is in the present case, as to how licensing and regulatory schemes, which are subject to change, can determine the existence or nonexistence of "actual underlying differences" in property.

Article 44 allows different tax rates as to income derived from different classes of property, not on income derived from businesses subject to different regulations. The fact that the Legislature or State regulatory agencies treat the business of pawnbrokers differently from the way they treat other lending businesses may reflect many legitimate concerns, but it does not convert a single class of property into several classes for art. 44 purposes. As we stated in another context, "[t]he constitutional dictates of art. 44 do not rest on such shifting grounds." *Commissioner of Revenue* v. *Lonstein,* 406 Mass. 92, 95 (1989). "Actual underlying differences" must depend on more than the Legislature's saying so by way of regulation if art. 44 is to provide the restraint on the Legislature that the Constitution was designed to provide. It cannot fairly be said that there is an underlying difference between the property of pawnbrokers and that of loan companies such that pawnbrokers and loan companies, consistent with art. 44, may be taxed at different rates. To the extent that *Barnes* v. *State Tax Comm'n, supra,* holds otherwise, it should be overruled. The decision of the Appellate Tax Board in this case should be reversed.

All interest income from loans made in the course of business, whether made by pawnbrokers or others, must be

treated alike, either as Part A or Part B income.[1] The most appropriate remedy in this case would be for the court to treat all interest income from loans made in the course of business as Part B income. That would be consistent with the remedy fashioned by the court in *Commissioner of Revenue* v. *Lonstein*, 406 Mass. 92, 95 (1989); *Salhanick* v. *Commissioner of Revenue*, 391 Mass. 658, 665 (1984); and *Daley* v. *State Tax Comm'n*, 376 Mass. 861, 863, 866 (1978). It would also be consistent with the distinction generally made by G. L. c. 62 between earned (Part B) and unearned (Part A) income. See *Ingraham* v. *State Tax Comm'n*, 368 Mass. 242, 247 n.3 (1975). In addition, it would be consistent with the clear intention of the Legislature that interest from loans made in the course of business by pawnbrokers be considered Part B income, subject to taxation at the rate of five per cent. Lastly, such a remedy would obviate the need to consider, as the court has done, the dubious propriety of the commissioner's ruling that the taxpayer must deduct his share of the Subchapter S corporations' business expenses from his Part B income and may deduct the expenses from Part A income only to the extent that they exceed the amount of the taxpayer's Part B income.

---

[1]Corporations are taxed under G. L. c. 63 (1992 ed.), and are exempt from the income tax levied under G. L. c. 62.