DeCordova and Dana Museum and Park *vs.* Director of the Division of Employment Security.

Middlesex.    February 5, 1976. — April 26, 1976.

Present: Hennessey, C.J., Reardon, Quirico, Braucher, & Wilkins, JJ.

*Employment Security,* Exempt organization.

Employees working exclusively in the school of art of a nonprofit corporation maintaining an arts center, consisting of the school, a museum and a park, were engaged in "employment" under G. L. c. 151A, 4A (*f*), and covered by the Massachusetts Employment Security Law, where it appeared that the school was not "an institution of higher education" and, although it had its own separate administrative and teaching staff and functions, the school operated as a unit within the corporation's organizational structure. [178-181]

Petition filed in the District Court of Central Middlesex on July 31, 1973, for review of a decision of the board of review in the Division of Employment Security.

The case was heard by *Forte,* J.

*John Silas Hopkins, III,* for the plaintiff.

*William D. Jackson,* Assistant Attorney General (*Frederick A. Harkins & Joseph S. Ayoub,* Assistant Attorneys General, with him) for the defendant.

*Glenn E. Dawson,* for Morgan Memorial Goodwill Industries, Inc., amicus curiae, submitted a brief.

WILKINS, J.   We must decide whether the DeCordova and Dana Museum and Park (DeCordova) must make contributions to the unemployment compensation fund, maintained under the Massachusetts Employment Security Law (G. L. c. 151A), with respect to the services of those of its employees who work exclusively in DeCordova's school of art. DeCordova is a nonprofit corporation which maintains an arts center in Lincoln, consisting of a museum, a park, and a school of art. The school of art has its own administrative and teaching staff and functions separately from DeCordova's other programs but as a unit within DeCordova's organizational structure. DeCordova claims that employment in its school of art is not "employment" as defined in G. L. c. 151A, § 4A, inserted by St. 1971, c. 940, § 4.

The basic controversy turns on whether persons working in the school of art are "in the employ of a religious, charitable, educational or other organization, other than a school which is not an institution of higher education." G. L. c. 151A, § 4A (*f*). The parties agree that the school is not an institution of higher education. DeCordova argues that, therefore, services for such a school are excluded from "employment" covered under the Employment Security Law. The Director of the Division of Employment Security (Director) argues that employees working for the school of art are in the employ of DeCordova and that DeCordova is not an exempt school. We conclude that this awkwardly drafted statute requires DeCordova to treat employees working for its school of art as engaged in employment covered by the Employment Security Law.

DeCordova's appeal has arrived here as a result of the following events. The Director concluded that DeCordova's school employees were engaged in "employment" under G. L. c. 151A, § 4A, interpreting the exemption for services in the employ of a school as applicable only to organizations operating a primary, elementary, or secondary school, "the attendance at which is required by law and therefore, compulsory." DeCordova appealed to the board of review (board) in the Division of Employment Security. The board found that teachers are required to enter into teach-

370 Mass. 175                                                177

DeCordova & Dana Museum & Park *v.* Director of Div. of Emp. Sec.

ing agreements with DeCordova and that the right to ter-
minate a teacher's employment rests ultimately with the
director of DeCordova and its board of directors. On the
other hand, the board of review found that the school of
art was functionally separate from DeCordova's other pro-
grams. Not relying on the reason advanced by the Director
in support of his decision, a majority of the three-person
board ruled that the services performed by the staff of the
school of art constituted employment, "not in the employ
of a school, but in the employ of the appellant organization,
a non-profit educational organization within the meaning
of [§ 4A (*f*) ]." The board, therefore, affirmed the Director's
decision. The decision of the board was affirmed in turn on
DeCordova's appeal to the District Court of Central Mid-
dlesex. See G. L. c. 151A, §§ 12 and 42. DeCordova then
appealed directly to this court, as provided in G. L. c. 151A,
§ 42.

We agree with DeCordova that the question before us
is solely a question of law. There are no findings of fact
made by the board which preclude DeCordova from seek-
ing our independent judgment on the application of § 4A
(*f*) to its circumstances. The facts are not in dispute.

Our function is to discern the legislative intent in the
language of § 4A (*f*). Literally, § 4A (*f*), which is set forth
in full in the margin,[1] includes within covered employment
any service performed in the employ of an organization
unless that organization is a school below college level. Em-
ployment by DeCordova obviously is employment by an
organization, and DeCordova as an organization is not a
school below college level.

DeCordova responds to this literal application of § 4A (*f*)
by contending that it should not be required to contribute

---

[1] General Laws c. 151A, § 4A (*f*), reads as follows: "[The term 'em-
ployment' shall include any service performed] ... (*f*) in the employ
of a religious, charitable, educational or other organization, other than
a school which is not an institution of higher education, — only if the
service is excluded from 'employment' as defined in the Federal Un-
employment Tax Act solely by reason of section 3306 (*c*) (8) of that
act and is not excluded from 'employment' under section six."

solely because it maintains a museum as well as a school of art. It argues that employees of an identical school of art, standing alone as an employer, would not be engaged in employment under the statute and that the Legislature could not have intended to require different treatment of services for two otherwise similar schools. DeCordova stresses that it operates a school of the type defined in § 4A *(f)* and that the word "organization" in § 4A *(f)* does not require that the organization be a legal entity. DeCordova undertakes to support this position by the legislative history of § 4A *(f)*.

Section 4A was added to G. L. c. 151A by St. 1971, c. 940, an act the heading of which states that it further regulates "the provisions of the employment security law in order to conform with the requirements of the federal law . . . ." An introductory clause states that the purpose of St. 1971, c. 940, is "to immediately make necessary changes in the employment security law in order to conform with federal law . . . ." From this language and the provisions of the act, a legislative intent to adjust the Massachusetts law to meet Federal requirements is apparent. There is no indication that the Legislature intended any other broadening of the scope of the coverage of the law.[2]

The 1970 amendments to the Federal law encouraged States to make services in the employ of most charitable organizations subject to the State unemployment system for the first time.[3] However, certain services in the employ

---

[2] The Employment Security Amendments of 1970 made extensive changes in the Federal unemployment tax provisions. Act of August 10, 1970, Pub. L. No. 91-373, 84 Stat. 695, amending Int. Rev. Code of 1954, §§ 3301-3311. A State unemployment law may be approved and certified by the Secretary of Labor as meeting Federal requirements (Int. Rev. Code of 1954, § 3304[a] and [c]), and, if so certified, any employer making contributions under such a State law is entitled to a stated credit against his Federal tax. Int. Rev. Code of 1954, § 3302(a), (b), (c). Statute 1971, c. 940, was a timely response to the deadline for compliance with the changes in the Federal law. Int. Rev. Code of 1954, § 3304(c). See Act of August 10, 1970, Pub. L. No. 91-373, § 142(i), 84 Stat. 708.

[3] State coverage of employment by such organizations was encouraged by conditioning Federal approval of the State law on a broaden-

370 Mass. 175                                      179

DeCordova & Dana Museum & Park *v.* Director of Div. of Emp. Sec.

of charitable organizations do not have to be covered by a State's law. See Int. Rev. Code of 1954, § 3309 (b). Among these services are services performed "in the employ of a school which is not an institution of higher education." Int. Rev. Code of 1954, § 3309 (b) (3).

Statute 1971, c. 940, adopted all the permissible Federal exceptions concerning employees of charitable organizations. All of them, except the exemption involved here, were added to G. L. c. 151A, § 6, which lists services which are not included within "employment." St. 1971, c. 940, § 8. A number of the services exempted by G. L. c. 151A, § 6, are defined in terms of the nature of the service performed and not in terms of the nature of the employer. We think that some significance can be derived from the fact that the exception in § 3309 (b) (3) for services "in the employ of a school which is not an institution of higher education" is absent from the listing of exempt services in § 6.

The Legislature undertook to exclude from "employment" services in the employ of a school below college level in the section which otherwise extended coverage to educational institutions and other charitable organizations. It merged the language of § 3306 (c) (8) — "service performed in the employ of a religious, charitable, educational, or other organization described in section 501 (c) (3) ..." — with the language from § 3309 (b) (3) — "in the employ of a school which is not an institution of higher education" — to produce § 4A (*f*). This blending of themes was not accomplished without some discord, but we think it significant that the word "organization" in § 4A (*f*) incorporates the Federal tax meaning of the word "organization" as appearing in § 501 of the Code. Such an organization must be formally organized, at least to the extent of having its own

ing of coverage to provide benefits for most employees of most charitable organizations. See Act of August 10, 1970, Pub. L. No. 91-373, § 104, 84 Stat. 697, amending Int. Rev. Code of 1954, § 3304(a)(6), which, through § 3309(a)(1)(A), requires States to pay unemployment compensation with respect to services excluded from the Federal tax by § 3306(c)(8) (i.e., "services performed in the employ of a religious, charitable, educational, or other organization described in section 501[c][3] which is exempt from income tax under section 501[a]").

articles of organization.[4] See Int. Rev. Code of 1954, § 501 (c) (3); Treas. Reg. § 1.501(c) (3)-1(a), (b) (1939). Cf. *Faulkner* v. *Commissioner*, 112 F.2d 987, 989 (1st Cir. 1940).

The use of the term "organization" in § 4A (*f*) supports the Director's interpretation of § 4A (*f*). A school below college level the employees of which are to be exempt from coverage must be an organization which exists as such under Federal tax law. The employees working in DeCordova's school of art are employees of an organization (DeCordova) described in § 501 (c) (3) of the Code and exempt from income tax under § 501 (a) of the Code. However, that organization is not a school. We will adhere to the meaning for Federal tax purposes of language incorporated in a State statute where no contrary legislative intent is apparent. See *B.W. Co.* v. *State Tax Comm'n, ante,* 18, 22-23 (1976); *Forté Inv. Fund* v. *State Tax Comm'n,* 369 Mass. 786, 788 (1976).

Other considerations which might be guides in determining the meaning of this language tend, on balance, to support our conclusion that employees of the school of art are covered. By deciding that those employees are within the act we eliminate the possibility that the Commonwealth's plan might be found to be underinclusive and thus fail to achieve approval by the Federal government. Our decision conforms to the mandate of G. L. c. 151A, § 74, as appearing in St. 1949, c. 290, that the Employment Security Law "shall be construed liberally in aid of its purpose, which purpose is to lighten the burden which now falls on the unemployed worker and his family." On the other hand,

---

[4] The reference to "other organization" in § 4A (*f*) is meaningful only if one understands that in its historical and statutory context it means any other organization "described in section 501(c) (3) which is exempt from income tax under section 501(a)." Int. Rev. Code of 1954, § 3306(c) (8).

Unless the "organization" under § 4A (*f*) is an "organization" described in § 501(c) (3), service in the employ of the organization could not be "excluded from 'employment' as defined in the Federal Unemployment Tax Act solely by reason of section 3306 (c) (8)," as required by the last clause in § 4A (*f*).

we recognize that neither the State nor Federal law requires that all employees of a single employer be treated similarly, as either covered or not covered. See G. L. c. 151A, § 4A (*d*) and (*e*) and § 8; Int. Rev. Code of 1954, § 3306 (c) (5), (10), (13), (15), and (17). We further recognize that a corporate reorganization may produce the tax result for which DeCordova argues here and that the different treatment of employees of DeCordova's school of art and those of a similar school, having no other activities, has no strong support in terms of public policy.

*Judgment affirmed.*