COMMISSIONER OF REVENUE vs. ANTHONY A. FRANCHI &
another.[1]

Suffolk. October 8, 1996. - November 21, 1996.

Present: WILKINS, C.J., ABRAMS, GREANEY, & FRIED, JJ.

*Taxation,* Income tax, Interest income. *Statute,* Construction.

Discussion of the Massachusetts tax statutes as they interact with provi-
sions of the Internal Revenue Code and regulations thereunder with re-
spect to imputed interest between a taxpayer and a "passthrough entity"
and with respect to "passive activity" income and deductions. [819-821]

Imputed interest on a loan made to a partnership by the taxpayer partner,
which was, commencing January 1, 1987, considered under the Internal
Revenue Code to be passive activity gross income subject to a corre-
sponding offset of passive activity deductions, was properly to be
considered Part B income under Massachusetts tax law, where the Mas-
sachusetts tax statute adheres to and incorporates the Federal
characterization, interpretation and definition of income. [821-825]

APPEAL from a decision of the Appellate Tax Board.

The Supreme Judicial Court on its own initiative transferred
the case from the Appeals Court.

*Don E. Gorton, III,* for the Commissioner of Revenue.

*J. Thomas Price* for the taxpayers.

GREANEY, J. This is an appeal by the Commissioner of
Revenue (commissioner), pursuant to G. L. c. 58A, § 13
(1994 ed.), from a decision of the Appellate Tax Board
(board) granting Anthony A. Franchi and Constance Franchi
(taxpayers) applications for abatement of income taxes paid
by them in 1988 and 1989. We affirm the board's decision.

At issue is the Massachusetts tax treatment of income and
deductions that arise pursuant to Internal Revenue Code

---

[1]Constance Franchi.

(I.R.C.) §§ 469 and 7872,[2] which govern debts between a taxpayer and "passthrough entities," where the taxpayer is a partner whose participation in the partnership is a "passive activity." During the tax years in question, taxpayer Anthony A. Franchi (taxpayer partner) was a general partner in Jonathan Drive Realty Associates (partnership). In July, 1988, the taxpayer partner transferred a parcel of improved real estate to the partnership, in a way that created a debt owed to him by the partnership. Under then-existing Federal tax law, a debt of this nature gave rise to imputed interest income, which the taxpayers (who filed a joint return) reported as Part A income on their 1988 and 1989 Massachusetts tax returns, then taxable at a rate of 10%. See I.R.C. § 7872; G. L. c. 62, § 2 (*b*) (1), as amended through St. 1986, c. 488, § 26, and § 4 (*a*), as amended by St. 1975, c. 684, § 41.

Subsequent regulations issued by the United States Treasury, with an effective date retroactive to January 1, 1987, recharacterized the imputed interest as "passive activity gross income," and allowed taxpayers reporting this income to deduct from it any "related passive activity loss" that would pass through to the taxpayer partner. This set-off procedure resulted in the calculation of net passive activity income, which was then subject to Federal tax. See I.R.C. § 469; Temp. Treas. Reg. § 1.469-7T (1991). After these regulations were issued, the taxpayers filed amended Massachusetts personal income tax returns for 1988 and 1989, applying the Federal rules to the calculation of their Massachusetts taxes. Based on the new Federal characterization of self-charged, or imputed, interest as passive activity gross income, the taxpayers listed the net passive activity income from the partnership as Part B income on their amended returns and claimed abatements in the form of refunds for both tax years.

The taxpayers' claims were denied by the commissioner, and they appealed from these denials to the board. The board reversed the decision of the commissioner and granted the taxpayers' claimed abatements in full. The commissioner appealed from the board's decision, and we transferred the case to this court on our own motion. Consistent with established

---

[2]The references in this section are to the Federal tax law in existence in 1988 and 1989, enacted as part of the Tax Reform Act of 1986, and effective January 1, 1987.

principles governing the construction of tax statutes in Massachusetts, we conclude that this type of income, which would otherwise be treated as imputed interest income under Federal tax law, is now treated as "passive activity income," with the result that this income is no longer taxable under Massachusetts law as Part A interest income but instead is taxable, after being offset by passive activity losses related to that income, as Part B "other income."

1. *Statutory background.* The issue in this case is governed by the interaction of Massachusetts tax statutes with several provisions of the I.R.C., accompanying Treasury regulations, and a Department of Revenue (department) technical information release (TIR). A summary of these statutes, regulations, and other materials and their interconnections is provided here as background to our discussion of the merits.

The Massachusetts tax statutes and the Internal Revenue Code are inextricably interwoven. General Laws c. 62, § 2 (*a*), defines Massachusetts gross income as Federal gross income, adopting the definition under the I.R.C. Gross income in Massachusetts is divided into two classes, Parts A and B. G. L. c. 62, § 2 (*b*). Part A gross income consists of interest, dividends, and capital gain net income, subject to exclusions not pertinent here. G. L. c. 62, § 2 (*b*) (1). Part B gross income is all other Massachusetts gross income. G. L. c. 62, § 2 (*b*) (2). In 1988 and 1989, Part A income was taxed at a rate of 10%; Part B income was taxed at a rate of 5%. G. L. c. 62, § 4.

The definitions of the components of Part A income also follow Federal law in large part. Specifically, G. L. c. 62, § 1 (*i*), adopts the Federal definition of interest, stating that " '[i]nterest' shall have the same meaning as in [I.R.C. § 163], including *all amounts treated as interest by virtue of the operation of any other sections of the [I.R.C.],* including [sections of the I.R.C. not relevant to this inquiry]" (emphasis added).

The taxpayer partner's transfer of real estate was treated as a loan to the partnership and gave rise to interest charges under I.R.C. § 7872, which provides that, for this type of loan, "foregone interest" is calculated and then imputedly transferred, first from the lender to the borrower, and then back to the lender as interest. I.R.C. § 7872 (a). The term "foregone interest" in this provision refers to an amount of interest "which would have been payable on the loan . . . if

interest [had] accrued . . . at the applicable Federal rate."
I.R.C. § 7872 (e) (2) (A). This interest was not actually paid
by the partnership to the taxpayer partner, but instead acted
to increase the amount owed by the partnership to him. None-
theless, this imputed interest was considered income to the
taxpayer partner. This same imputed interest also resulted in
an "expense" to the partnership, which, together with other
partnership deductions, was then passed through to the
taxpayer partner as a deduction.

The partnership involved in this case qualifies as a "passive
activity" under I.R.C. § 469. Deductions for passive activity
income are governed by this provision of the I.R.C., which in
turn provides a broad grant of authority to the Secretary of
the Treasury to prescribe regulations appropriate to carry out
its purpose. I.R.C. § 469 (*l*). In enacting § 469, Congress
recognized that, in some instances, the interest imputed to the
taxpayer partner as income might result in a taxpayer's being
taxed on interest paid by the taxpayer to himself. The draft-
ers of § 469 anticipated that Treasury regulations would be
issued to correct this inequitable situation. H.R. Conf. Rep.
No. 841, 99th Cong., 2d Sess. II-146 — II-147, reprinted in
1986 U.S.C.C.A.N. 4075, 4234-4235.[3] The Department of the
Treasury subsequently adopted Temp. Treas. Reg. § 1.469-
7T, which set forth rules governing lending transactions be-
tween a lending taxpayer and the passthrough entity in which

---

[3]The conference report specifically pointed out that, in circumstances
such as these, where an individual is being taxed on "self-charged" interest,

> "[I]t is not appropriate to treat the transaction as giving rise both to
> portfolio interest income and to passive interest expense. Rather, to
> the extent that a taxpayer receives interest income with respect to a
> loan to a passthrough entity in which he has an ownership interest,
> such income should be allowed to offset the interest expense passed
> through to the taxpayer from the activity for the same taxable
> year. . . ."

> "The conferees anticipate that Treasury regulations will be issued
> to provide for the above result."

H.R. Conf. Rep. No. 841, 99th Cong., 2d Sess. II-146 — II-147, reprinted
in 1986 U.S.C.C.A.N. 4075, 4234-4235.

the taxpayer owns a partnership interest.[4] These rules "[t]reat certain interest income resulting from these lending transactions as passive activity gross income . . . [and] [t]reat certain deductions for interest expense that is properly allocable to such interest income as passive activity deductions . . . ." Temp. Treas. Reg. § 1.469-7T (*a*) (*i*), (*ii*).

In 1988, the Legislature incorporated the I.R.C., as amended on January 1, 1988, applicable to all taxable years beginning on or after January 1, 1988. G. L. c. 62, § 1, (*c*), (*d*), and § 2 (*a*). See St. 1988, c. 106, §§ 1, 16. In so doing, the Legislature imported both § 469 and § 7872 into the Massachusetts tax statutes. In announcing this change of law, the department issued TIR 88-12 (Jan. 23, 1989), 2 Official MassTax Guide at 372 (West 1996), which explicitly pointed out that the provisions of the Tax Reform Act of 1986 would constitute part of Massachusetts tax law.[5] The department then issued TIR 89-2 (April 3, 1989), 2 Official MassTax Guide at 378 (West 1996), which confirmed that the passive activity rules of I.R.C. § 469 are included in the incorporation of Federal law into Massachusetts law.[6]

2. *Discussion.* We are faced with a question of statutory in-

---

[4]Temporary Treasury Regulation § 1.469-7T ("Treatment of self-charged items of income and expense") was adopted unchanged on May 12, 1992, by Treasury Decision 8417, and is now a permanent regulation, cited as Treas. Reg. § 1.469-7.

[5]The introduction to TIR 88-12, 2 Official MassTax Guide at 372-373 (West 1996), issued in January, 1989, reads in pertinent part as follows:

> "Because Massachusetts uses federal gross income as the starting point in computing Massachusetts gross income and because certain deductions from Massachusetts gross income are based on federal deductions, the changes in the federal law affect the computation of Massachusetts personal income tax for taxable years beginning on or after January 1, 1988."

[6]Technical Information Release 89-2 (April 3, 1989), 2 Official MassTax Guide at 378 (West 1996), is entitled "Massachusetts Income Tax Treatment of Passive Activity Losses Under Sec. 469 of the Internal Revenue Code," and reads in pertinent part as follows:

> "In general, a passive activity loss is the amount, if any, by which the passive activity deductions for the taxable year exceed the passive activity gross income for the taxable year. Temp. Reg. § 1.469-2T(b)(1) [promulgated under I.R.C. § 469]. . . .

> "The Massachusetts treatment of passive activity losses for Mas-

terpretation that arises with some frequency in the area of Massachusetts tax law, one which requires balancing the State's independent development of its individual tax code against the Legislature's consistent references to, and incorporation of, Federal tax provisions. See, e.g., *Grady* v. *Commissioner of Revenue*, 421 Mass. 374 (1995); *Commissioner of Revenue* v. *Shafner*, 392 Mass. 256 (1984); *Salhanick* v. *Commissioner of Revenue*, 391 Mass. 658 (1984); *Dow Chem. Co.* v. *Commissioner of Revenue*, 378 Mass. 254 (1979); *B.W. Co.* v. *State Tax Comm'n*, 370 Mass. 18 (1976); *Forte Inv. Fund* v. *State Tax Comm'n*, 369 Mass. 786 (1976).

This court most recently faced an analogous tax situation in *Grady*, *supra*. We there noted that, under Massachusetts law, it is well established that "[t]he right to tax must be found within the letter of the law and is not to be extended by implication." *Grady*, *supra* at 377, quoting *Commissioner of Revenue* v. *Molesworth*, 408 Mass. 580, 581 (1990). The general rule is that tax statutes are to be strictly construed according to their plain meaning, as the State has no power to tax unless that power has been expressly conferred by statute. *Commissioner of Revenue* v. *AMIWoodbroke, Inc.*, 418 Mass. 92, 94 (1994). Accordingly, tax statutes are usually construed "against the taxing authority, and all doubts resolved in favor of the taxpayer." *Grady*, *supra*, quoting *AMIWoodbroke, Inc.*, *supra*.

Although the interaction of the relevant statutes is relatively complex, the applicable provisions are simple and consistent. Under G. L. c. 62, § 2 (*b*) (1), Part A income includes interest, dividends, and capital gain net income. In its definition of the term "interest," G. L. c. 62, § 1 (*i*), specifically refers to the I.R.C. and provides that, in addition to interest arising under the specified I.R.C. sections, interest includes "all amounts *treated as interest* by . . . other sections of the [I.R.C.]" (emphasis added). Thus, in order to be included in Part A income, an amount must either be interest

sachusetts residents is the same as the federal treatment. Allowable losses are the same losses that are allowed on federal Form 8582, line 19, to the extent that the losses were not deducted on the taxpayers' Massachusetts returns in prior taxable years. Also, the net passive activity income or loss is the same as allowed on federal Form 8582, line 17."

under a provision of the I.R.C. specified in § 1 (*i*) or be treated as interest under another provision of the I.R.C.[7]

Prior to the enactment of Temp. Treas. Reg. § 1.469-7T, imputed interest from a loan, such as the one made by the taxpayer partner to the partnership in this case, was treated as interest by Federal tax law. However, the plain language of Temp. Treas. Reg. § 1.469-7T explicitly changed this treatment. As noted above, the language of the regulation expressly directs that interest income resulting from such lending transactions be *treated* as passive activity gross income, in order to allow for the corresponding offset of passive activity deductions. Since the enactment of Temp. Treas. Reg. § 1.469-7T, no provision of the I.R.C. has treated this type of income as "interest" and, it follows, as matter of logic, that the income in this case falls outside the definition of Part A income and into the catchall category of Part B income. We therefore conclude that the plain language of these statutes, and their accompanying regulations, provides that any income considered to have been received by the taxpayer partner as a result of a loan to the partnership should be considered Part B income for the purposes of State taxation.

This court has consistently adhered to the meaning of Federal tax language incorporated into our tax law where no contrary legislative intent is apparent. See *Grady, supra* at 380, citing *B. W. Co., supra* at 22-23. As we noted in the *B. W. Co.* case:

> "If the State income tax law has incorporated Federal income tax provisions, those provisions should be interpreted as they are interpreted for Federal income tax purposes. . . . We should be reluctant to infer the existence of a State legislative intent which would require us to disregard the meaning established under Federal tax law of unambiguous, common statutory language."

*Id.* Adopting the Federal interpretation of a statutory term is especially appropriate where the corresponding Massachusetts tax law specifically refers us to that interpretation, as § 1 (*i*)

---

[7]The statement of agreed facts submitted to the board states that "[t]he imputed interest in each case was computed pursuant to § 7872 of the [I.R.C.] . . . ." The commissioner makes no argument that the income at issue in this case falls under any other specified section of the I.R.C.

does here when it mandates inclusion of all amounts "treated as interest . . . [under] other sections of the [I.R.C.]." Our conclusion that the taxpayers' income here is not treated as interest under Federal law is bolstered by the categorization of passive activity income and deductions on Federal Form 8582 and its related worksheets, and the impact of such treatment on Federal Form 1040 and Massachusetts Resident Income Tax Form 1.[8]

We have also noted a general premise underlying the incorporation of Federal tax law into a Massachusetts tax statute: "Federal definitions may vary from one taxable year to the next." *Parker Affiliated Cos.* v. *Department of Revenue*, 382 Mass. 256, 265-266 (1981). The income to the taxpayers here was totally a creation of Federal tax law, and its classification as interest or passive activity income is similarly dependent. Absent a clear legislative directive to treat this income as interest income in Massachusetts, we are bound by the language of the Massachusetts tax statute to adhere to the current Federal interpretation. See *DeCordova & Dana Museum & Park* v. *Director of the Div. of Employment Sec.*,

---

[8]Although the commissioner questions the relevancy of such administrative materials, these materials, issued according to Treasury Department regulations, directly establish the Federal treatment of this category of income under the I.R.C. and thus are pertinent to understanding whether the income at issue in this case falls within the statutory definition of "interest" under G. L. c. 62, § 1 (*i*). Here again, the interrelationship between the Massachusetts and Federal tax schemes is apparent: Schedule B ("10% Interest and Dividend Income") of the Massachusetts personal income tax return requires a taxpayer to transfer the taxpayer's "[t]otal interest income (from U.S. 1040 lines 8a and 8b, 1040A, lines 8a and 8b, or 1040EZ, line 2)." Thus, in order to be included in Part A income on the Massachusetts return, an item of income must literally be treated as interest income on the Federal return. This is not the case with the income at issue here. After the computations required under Temp. Treas. Reg. § 1.469-7T, a taxpayer's net passive activity income is carried to Form 1040 on line 18 ("Rents, royalties, partnerships . . . etc.") and thence to line 6 ("Rent . . . income or [loss]") or line 7 ("Partnership and S corporation income or [loss]") of the Massachusetts return. Therefore, under Federal tax law, the technical treatment of a taxpayer partner's imputed interest charges is consistent with the treatment specified in the statutory and regulatory language: nowhere is this income "treated as interest."

370 Mass. 175 (1976), citing *B.W. Co., supra* at 18, 22-23; *Forte Inv. Fund, supra* at 788.[9]

The commissioner's reliance on *Drapkin* v. *Commissioner of Revenue,* 420 Mass. 333 (1995), is unavailing. The taxpayer in *Drapkin* did not, and could not have, claimed relief based on the incorporation of Federal language into the Massachusetts tax statute. There was no question that the taxpayer in *Drapkin,* a private mortgage lender, was in the business of making loans and that the income at issue was properly classified as interest under Massachusetts law. *Drapkin, supra* at 335-336. The taxpayer's argument in *Drapkin* was wholly constitutional, challenging the different treatment accorded interest from loans made by pawnbrokers under G. L. c. 62, § 2 (*b*) (1) (B), as invalid under art. 44 of the Amendments to the Massachusetts Constitution. *Id.* at 336. Our holding in this case therefore does not conflict with that of *Drapkin.*

The board's decision is affirmed.

*So ordered.*

---

[9]The commissioner would narrow the scope of the incorporation of § 469 and its accompanying regulations to the question whether the deductions provided therein are directly "allowable" against this income under Massachusetts law. The commissioner's proposed treatment of the taxpayers' income in this case would thus follow § 469 only insofar as its regulations determine deductions against the taxpayers' Part B income. At the same time, the commissioner proposes to follow the characterization in § 7872 of passive activity income as "interest," thus ignoring regulatory directive in § 469 to "treat [such] interest income . . . as passive activity income." See Temp. Treas. Reg. § 1.469-7T. This selective incorporation would allow the commissioner to reduce the amount of deductible passive activity loss by offsetting it against passive activity income for Part B income purposes, thus reducing the benefit of such losses to the taxpayer, while simultaneously taxing that same passive activity income in full as Part A income.

The commissioner draws support for his interpretation from the broad divisions of Massachusetts income into Parts A and B. While it is true that "[t]he consistent inclusion of a Federal tax benchmark has not restrained a Legislature from carving out peculiar variations to further the State's tax policies," *Parker Affiliated Cos.* v. *Department of Revenue,* 382 Mass. 256, 261 (1981), we discern no such explicit legislative directive here to authorize the commissioner's selective incorporation of the applicable Federal provisions. Further, the commissioner's interpretation begs the fundamental question whether the income at issue qualifies as interest under G. L. c. 62, § 1 (*i*).